1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10    RAMIRO MONTANEZ

11               Petitioner,                    No. CIV S-09-1865 KJM CHS

12          vs.

13    MATTHEW CATE, et al.,

14               Respondent.          FINDINGS AND RECOMMENDATIONS

15    _____/

16                              I.  INTRODUCTION

17          Petitioner Ramiro Montanez, a state prisoner, proceeds through counsel with a

18    petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254.  Petitioner is currently

19    serving an indeterminate prison term of nineteen years and four months for convictions sustained

20    in the San Joaquin County Superior Court, case number SF092448A.

21                              II.  BACKGROUND

22          The following statement of facts was taken from the unpublished opinion of the

23    California Court of Appeal, Third District; petitioner is the defendant referred to therein.  Since

24    these facts have not been rebutted with clear and convincing evidence they are presumed correct.

25    28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004).

26    /////

1

At 1:52 a.m. on July 7, 2004, the Stockton Police Department received a 911 emergency call from [defendant's girlfriend, Elida] Mejia. She told the operator that she and her daughter were in her car while defendant was shooting bullets into the car. As Mejia was talking to the operator, she said defendant was still shooting, and was getting in his black Cadillac Escalade. She then said he had turned around and was trying to escape. Mejia started following defendant, indicating she did not want him to escape because she wanted to press charges. Mejia and her daughter could both be heard crying, and Mejia told the operator she was shaking. Mejia told the operator she and defendant had been in an argument. He was kicking her, so she started hitting him, at which point he pulled out a gun. She told the operator they were arguing because he was with another woman.

Officer Anthony Perry responded to Mejia's call. He found Mejia and her daughter standing outside Mejia's vehicle. Both were crying. There were two bullet holes on the passenger side of Mejia's vehicle, behind the passenger door. Mejia told Perry that defendant shot at her car three times while she and her daughter were in it. Mejia told Perry she wanted an emergency restraining order against defendant, which Perry obtained for her.

Officer Christopher Friedmann interviewed Mejia the morning of the incident for a little over an hour. She told him she had gone to a bar with her daughter because she received a call that defendant was there. Defendant was with another woman. Defendant and Mejia went outside and were arguing. At some point, Mejia slapped defendant in the face, and he kicked her several times. She hit the hood of his car, then went back to her car, got into it, and shifted it into gear. Defendant went to his Escalade, then walked up to her car with a gun in his hand. He pointed the gun at the car and fired three times. Two shots hit the passenger side of Mejia's car. She drove around the block, and when she drove by the bar again, defendant began shooting again. She called the police, then followed defendant as he drove away.

At the preliminary hearing, Mejia's testimony was consistent with her 911 call and the story she gave the officers. However, her testimony at trial was significantly different. At trial, Mejia again testified that after she and defendant went outside the bar they were arguing and she hit his car. After that, she went back to her car and stood by it, but did not get into it. She saw defendant shoot into the car, but she was not in it. Her daughter was not inside the car either, because she had taken her out to take her inside the bar and show the girl her new "mommy." After defendant shot into her car she and her daughter got into the car and drove away. She made a U-turn to go back, and she saw him shoot once, but could not tell if he was shooting into the air or at her. She went around the block and saw another muzzle flash. She watched him and saw two more muzzle flashes, at which point she called 911. She then proceeded

to follow him.

[At the preliminary hearing, Mejia testified she] told the responding officer that she wanted an emergency protective order not because she was afraid of defendant, but because she "was just trying to be a bitch." She told the officers what they wanted to hear because she was mad at defendant.

Officers Joseph Aguilar and Wesley Grinder, who stopped defendant after Mejia's 911 call, searched defendant's Escalade. In the car they found a .380 caliber gun with two bullets in it, three baggies of crystal methamphetamine weighing a total of 40 grams, a cell phone, nine small Ziploc baggies in one location and 18 in another, a digital scale with white residue on it, and approximately $22,700 in cash. When the officers went back to their police car, they found defendant had spit all over the front compartment of the vehicle.

At the police station, defendant was placed in an interview room and strip searched. His clothing was searched more closely, and another $822.00 was found in his pockets and wallet, as well as a 9 millimeter Luger bullet in his pocket. During the search, defendant placed his hands on top of his head and urinated on the carpet in the interview room while he said, "oh, fuck, this is cool."

Defendant testified on his own behalf. He said none of the money in the sock came from drug sales. He said the money in the sock was money he had collected to buy a taco truck. Nine thousand dollars was from his own pocket, his sister had given him $5,000, and his dad's girlfriend gave him $10,000. He was buying the truck from a man named Gustavo. He did not know Gustavo's last name. He went to Gustavo's the afternoon before the incident, but Gustavo was not there. Defendant admitted some of the money in his pocket came from drug sales.

Defendant said he was in the bar when Mejia came in upset and yelling. Mejia grabbed him and dragged him outside. They argued and she slapped and kicked him. She started hitting the Escalade. Defendant heard Mejia's daughter crying in the car. He went to the car to calm the girl. Defendant tried to push Mejia into her car, but she was kicking him. She then grabbed a gun from under the seat. He backed off. Mejia went to get her daughter out of the car and put the gun down. Defendant took the gun, and Mejia started chasing him.

Defendant was on one side of the car and Mejia was on the other side. She opened the door for her daughter and pulled her out. Mejia reached into the car and grabbed what defendant thought was a knife. When defendant told a friend not to let them in the bar, Mejia turned around and swung at defendant with what defendant thought was the knife in her hand. Defendant took "my

gun" from out of his waist band and shot at the back window of the car. The window did not break, so defendant shot again and hit the glass with the gun at the same time. Defendant told Mejia, "I ain't playing neither," and "[y]ou better get your ass home now."

Mejia and her daughter jumped in the car and left. Mejia made a U-turn and came back. Defendant shot the gun into the air. Mejia came back again, and he shot into the air again twice.

Defendant claimed the drugs found in his car were given to him at the bar by a man named Francisco Hernandez. He was not aware he had a bullet in his pocket. He had purchased the pants from Goodwill, and the bullet may have been there when he bought them. He admitted spitting on the patrol car. He did it because he was mad that the officers were taking his money. He also admitted urinating in the interview room. He told the officers he needed to use the restroom, but they would not let him.

Defendant's sister, Lourdes Jaurigue, was a college student, but she withdrew from school the summer her brother got arrested. She gave her brother $5,000 of the financial aid money she received from the college so he could by a taco truck.

Frederico Tafoya testified he had known defendant since middle school. On the night of the incident, he was at the same bar as defendant. Defendant was with a woman they knew from high school. At some point, Mejia came in the bar and was screaming and yelling. She was escorted outside. Tafoya looked out the door and saw Mejia taking her daughter out of the car and pulling her, telling her she was going to show her who her mommy was. Tafoya saw Mejia with a knife, "or something like that", and saw her chasing defendant around. Tafoya heard gunshots, but never saw defendant with a weapon.

*People v. Montanez*, No. L 142842, 2008 WL 142842 at 1-3 (Cal. App. 3 Dist., 2008).

Based on the foregoing, the jury acquitted petitioner of several charged offenses including two counts of attempted murder and one count of shooting into an occupied vehicle. The jury convicted petitioner of eight offenses, including assault with a firearm (as to Mejia); shooting at an unoccupied vehicle; child endangerment; possession for sale of methamphetamine; transportation/sale of methamphetamine; possession of a controlled substance with a loaded, operable firearm; carrying a concealed firearm; and being a felon in possession of a firearm. An aggregate sentence of nineteen years and four months was imposed.

/////

4

On direct review, the California Court of Appeal, Third District, affirmed the judgment and sentence.  A petition for review to the California Supreme Court was denied. Petitioner sought habeas corpus relief in the state courts which was likewise denied.

Respondent agrees that petitioner's grounds for relief were properly exhausted in state court and timely presented here.  Respondent contends, however, that grounds one and two were procedurally defaulted in state court and therefore barred in this court.

### III.  GROUNDS FOR RELIEF

Ground One:  The jury was erroneously permitted to consider the brief testimony of Mejia's daughter, who was not cross-examined, in violation of due process;

Ground Two:  The court erroneously instructed on the elements of child endangerment, allowing the prosecution to obtain a conviction without proving every element of the offense beyond a reasonable doubt;

Ground Three:  Trial counsel rendered ineffective assistance in failing to object at trial on the basis of grounds one and two, above, in order to properly preserve the issues for appeal;

Ground Four:  Insufficient evidence supports the child endangerment conviction; and

Ground Five: The jury was erroneously instructed on assault with a firearm under a negligence standard, in violation of due process.

### IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001). This court looks to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919. It is the habeas corpus petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law. *Woodford v. Visciotti*, 537 U.S. 19, 123 S. Ct. 357, 360 (2002).

## V. DISCUSSION

### A.   Grounds One and Two: Mejia's Daughter's Testimony and the Child Endangerment Instruction

#### 1. Factual Basis for Ground One: Mejia's Daughter's Testimony

At trial, the prosecution called Mejia's seven year old daughter to the witness stand. In the jury's presence, the judge asked her questions to establish competence and that she understood the difference between telling the truth and telling a lie. (Reporter's Transcript of Proceedings ("RT") at 288-90.) After she was sworn in, the prosecutor began direct examination but asked only a few preliminary questions before the girl apparently began to cry. Defense counsel interjected: "Excuse me, your Honor. I think we need to take a break, she's beginning to cry." (RT at 291.) The court sent the girl out into the hall to be with her mom for a few minutes and then recessed for an early lunch. (RT at 291.) She was never recalled to the stand. Neither party objected, requested that her testimony be stricken, or requested that the jury be given any

1  particular instructions on the issue.  Petitioner claims that his rights under the Due Process

2  Clause and Confrontation Clause were violated when the jury was permitted to consider the girl's

3  testimony without the defense cross-examining her.

4             2.  Factual Basis for Ground Two:  Child Endangerment Instruction

5             Petitioner was charged with a felony violation of California Penal Code section

6  273a(a), which proscribes child endangerment.  Petitioner claims that the trial court erroneously

7  instructed on this count, omitting the element that the child endangerment occurred while he had

8  "care and custody" of the child.  Defense counsel did not object to the instruction that was given.

9  Petitioner claims that the trial court's erroneous instruction allowed the jury to convict without

10  finding all elements of the offense beyond a reasonable doubt.

11             3.  Procedural Bar

12             Petitioner first presented these two claims in a July 16, 2009 petition for writ of

13  habeas corpus to the San Joaquin County Superior Court.  The superior court denied the claims

14  on state law grounds, explaining, in relevant part:

15        The law does not permit repetitious and piecemeal presentation of
   post-conviction claims by way of habeas corpus, *In re Clark (1993)*
16        *5 Cal.4th 750, 774*, and before a successive petition will be
   entertained on the merits, the Petitioner must explain and justify
17        the failure to present claims timely because a Petitioner is expected
   to demonstrate due diligence in pursuing his claims.  *Id*.  With
18        respect to the issues of alleged mis-instruction as to 'care and
   custody' and the alleged failure to instruct the jury to disregard R's
19        testimony because of Petitioner's lack of opportunity to cross-
   examine, Petitioner has failed to meet his burden.  Those issues
20        were in the record prepared for appeal and should have been
   apparent to appellate counsel, who raised other issues of alleged
21        mis-instruction.  Neither of those issues depends on R's declaration
   and Petitioner presents us with no evidence regarding when he first
22        became aware of those claims and why he did not present them
   sooner.  Accordingly, Petitioner has failed to state a *prima facie*
23        case for relief.  *In re Clark*, *supra*, at 775, *also 787; In re Dixon
   (1953) 41 Cal.2d 756, 759-760.*

24

25  *Montanez v. Cate, et al.*, No. SF092448A, Order Denying Petition For Habeas Corpus (Sup. Ct.

26  of CA, San Joaquin County, November 5, 2009).

Presented with the same two claims, the California Court of Appeal and California Supreme Court both denied petitioner's habeas corpus petition without comment. The superior court's decision is therefore the last reasoned state court decision applicable to this claim. *See Ylst v. Nunnemaker*, 501 US. 797, 803-04 (1991).

Respondent contends that the superior court's imposition of a state procedural bar for failure to raise the claims on appeal forecloses consideration of these claims in this court. As a general rule, a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). For a state procedural rule to be independent, the state law basis for the decision must not be interwoven with federal law. *LaCrosse v. Kernan,* 244 F.3d 702, 704 (9th Cir. 2001). To be deemed adequate, it must be well established and consistently applied. *Poland v. Stewart*, 169 F.3d 575, 577 (9th Cir. 1999). An exception to the general rule exists if the prisoner can demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Once the state has pleaded the existence of an independent and adequate state procedural ground as an affirmative defense, the burden shifts to petitioner to place the adequacy of that procedural rule in issue. *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). In order to do so, petitioner must "assert[ ] specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Bennett*, 322 F.3d at 586. Thereafter, the state retains the ultimate burden of proving adequacy of the asserted bar. *Id*. at 585-86.

Here, however, petitioner fails to make specific factual allegations demonstrating the inadequacy of the state procedure and fails to cite authority demonstrating inconsistent

application of the rule.  Instead, petitioner attempts to show cause and prejudice for his failure to bring the claims sooner and contends that this court should reach the merits of his claims because a fundamental miscarriage of justice will result if the claims are not reviewed.

"[A] federal habeas petitioner who has failed to comply with a State's [procedural rule] must show cause for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted constitutional claim." *Murray v. Carrier*, 477 U.S. 478, 485 (1986) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  Satisfying the "cause" factor typically requires a petitioner to show that some objective factor external to the defense impeded his effort to comply with California's untimeliness rule. *Carrier*, 477 U.S. at 488.  Ineffective assistance of counsel will suffice for cause.  Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Carrier*, 477 U.S. at 486-88).  In addition, a claim of ineffective assistance must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. *Id*. (citing *Carrier*, 477 U.S. at 489.)  If the claim of ineffectiveness is itself defaulted, it cannot be the basis for cause, unless the petitioner can establish cause and prejudice with respect to the ineffectiveness claim itself. *Edwards*, 529 U.S. at 451-54.

Under this standard, petitioner fails to demonstrate cause.  Petitioner argues that he should be excused for not previously raising these issues because of trial counsel's ineffective assistance in failing to object, and appellate counsel's ineffective assistance in failing to raise the issues on direct appeal.  Petitioner explains that he remained unaware of these issues prior to newly retained counsel's review of the record.

Petitioner previously presented to the state courts an independent ineffective assistance claim regarding trial counsel's performance, but did not do so with respect to appellate counsel's performance.  He had the opportunity to file a timely state habeas corpus petition regarding appellate counsel's alleged failure, but did not do so.  Appellate counsel's alleged

1   deficiency in failing to raise the claims cannot therefore be used to establish cause for the

2   procedural default.  Here, as the state court noted, petitioner's claims "were in the record

3   preserved for appeal and should have been apparent to appellate counsel, who raised other issues

4   of alleged mis-instruction."  *Montanez v. Cate*, *et al*, *supra*, at 3.  Petitioner's claim of ineffective

5   assistance of appellate counsel was itself defaulted in state court.  Under these circumstances

6   appellate counsel's alleged deficient performance does not constitute cause for petitioner's

7   failure to present the underlying claims of trial court error.  *See Edwards*, 529 U.S. at 489, 451-

8   54.  Since cause is not shown, the issue of prejudice need not be addressed.  *See Smith v. Murray*,

9   447 U.S. 527, 533 (1986).

10          Petitioner further argues that a fundamental miscarriage of justice will result if the

11   claims are not reviewed, however, he fails to meet this demanding standard.  His case is not one

12   of those "extraordinary instances when a constitutional violation probably has caused the

13   conviction of one innocent of the crime."  *See McCleskey*, 499 U.S. at 494.  Accordingly, this

14   court should find that it is precluded from reviewing the merits of petitioner's procedurally

15   defaulted claims.  *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992).

16                              4.  Merits

17          In the alternative, even if petitioner's grounds one and two were not procedurally

18   defaulted, they would fail on the merits.

19                    a.  Ground One: Mejia's Daughter's Testimony

20          "[T]he Confrontation Clause requires that a defendant have the opportunity to

21   confront the witnesses who give testimony against him, except in cases where an exception to the

22   confrontation right was recognized at the time of the founding."  *Giles v. California*, 554 U.S.

23   353, 357 (2008).  Here, however, the defense never sought to have Mejia's daughter recalled to

24   the stand.  By not asserting the right, petitioner waived any right of confrontation that he held.

25   *See generally Godinez v. Moran*, 509 U.S. 389, 399 (1993) (noting that a defendant may decide

26   to waive his right of confrontation by declining to cross examine the prosecution's witnesses).

                                            10

1   Petitioner fails to demonstrate a violation of the Confrontation Clause.  Moreover, he

2   acknowledges that the trial court had no sua sponte duty to strike the testimony.

3           **b.  Ground Two: Child Endangerment Instruction**

4       Petitioner asserts that the Information alleged a violation of section 273(a) under a

5   particular theory or "branch" requiring the offender to have "care or custody of the child," but

6   that the court's instruction with CALJIC No. 9.37 improperly did not require the jury to consider

7   the "care or custody" question thus allowing the prosecution to obtain a conviction without

8   proving that element beyond a reasonable doubt.

9       Section 273a provides in relevant part:

10      (a) Any person who, under circumstances or conditions likely to
   produce great bodily harm or death, willfully causes or permits any

11      child to suffer, or inflicts thereon unjustifiable physical pain or
   mental suffering, or having the care or custody of any child,

12      willfully causes or permits the person or health of that child to be
   injured, or willfully causes or permits that child to be placed in a

13      situation where his or her person or health is endangered, shall be
   punished by imprisonment...

14

15   Cal. Penal Code § 273a (West 2004).

16       Count 14 of the Information charged petitioner with violating § 273a(a),[1]

17   endangering the health of a child.  The Information alleged that petitioner violated that section in

18   that he

19      did knowingly, willingly, and unlawfully cause and permit [R.] to
   be placed in such a situation that it's person and health was

20      endangered [sic] under circumstances and conditions that were
   likely to produce great bodily harm/death, while defendant(s) had

21      care and custody of the child(ren).

22   (Clerk's Transcript of Proceedings ("CT") at 233.)

23   /////

24

25      [1] Due to a clerical error, the Information incorrectly charged a violation of section
273(A)(1); this error was repeated in the judgment and finally corrected by the court of appeal

26   direct review.  *See People v. Montanez, supra*, at 7.

1    At trial, without objection, the jury was instructed with an edited version of

2 CALJIC No. 9.37, on what appears to be a different theory of child endangerment under section

3 273a(a) than was set forth in the Information.  The jury was instructed:

4           Every person who, under circumstances or conditions likely to
            produce great bodily harm or death, willfully causes or, willfully
5           and as a result of criminal negligence, permits a child to suffer
            unjustifiable physical pain or mental suffering, is guilty of a
6           violation of Penal Code section 273a, subdivision (a), a crime.

7 (RT at 2492-94.)  This was not a different crime altogether, but rather, at most, a different

8 "branch" or theory of the same crime of child endangerment prohibited by section 273a(a).  The

9 jury found petitioner guilty of child endangerment.

10    Generally, a claim of instructional error does not raise a cognizable federal claim

11 unless the error, considered in context of all the instructions and the trial record as a whole, "so

12 infected the entire trial that the resulting conviction violates due process."  *Estelle v. McGuire*,

13 502 U.S. 62, 71-72 (1991); *see also Henderson v. Kibbe,* 431 U.S. 145, 152-55, n.10 (1977);

14 *Cupp v. Nauhten,* 414 U.S. 141, 146-47 (1973).  On federal habeas corpus review, no relief can

15 be granted without a showing that the instructional error had a "substantial and injurious effect or

16 influence in determining the jury's verdict."  *Calderon v. Coleman*, 525 U.S. 141, 147 (1998)

17 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  An error such as an omitted

18 instruction is less likely to be prejudicial than a misstatement of the law.  *Kibbe*, 431 U.S. at 155.

19 In addition, reversal will rarely be justified for failure to give an instruction when no objection

20 was made in the trial court.  *See Id*. at 154.

21    Petitioner fails to cite any relevant federal precedent in support of this claim.

22 Contrary to petitioner's assertion, the instruction did not allow the jury to convict without finding

23 all elements of the crime.  Petitioner was charged with violating section 273a(a) and the jury was

24 accurately instructed with an edited version of CALJIC No. 9.37 with every required element of

25 one theory or "branch" of this crime.

26 /////

1    In his traverse, petitioner clarifies that the crux of his argument is that the

2  branches of the child endangerment statute "are not readily interchangeable at any point within a

3  trial," and that "switching to the first branch of the statute at the eleventh hour constituted a

4  seismic shift in the child endangerment case."  Arguments raised for the first time in a reply brief

5  generally need not be considered.  *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

6  Nevertheless, even considering this argument, petitioner fails to demonstrate that his trial was

7  rendered fundamentally unfair in violation of due process.

8    The Sixth Amendment, applicable to the states through the Due Process Clause of

9  the Fourteenth Amendment, guarantees a criminal defendant the fundamental right to be clearly

10  informed of the nature and cause of the charges against him.  U.S. Const. Amend. VI; *Jackson v.*

11  *Virginia*, 443 U.S. 307, 314 (1979) ("It is axiomatic that a conviction upon a charge not made or

12  upon a charge not tried constitutes a denial of due process.") A defendant has received fair notice

13  of the charges against him if the Information provides a description of the charges against him in

14  sufficient detail to enable him to prepare a defense.  *See James v. Borg*, 24 F.3d 20, 24 (9th Cir.

15  1994).  A defendant can also be adequately notified of the nature and cause of the accusation

16  against him by means other than the charging document.  *Id*. (citing *Morrison v. Estelle*, 981 F.2d

17  425, 428 (9th Cir. 1992).

18    Here, the Information gave petitioner adequate notice of the statute with which he

19  was charged.  Although the challenged instruction that was given at trial addressed only one

20  particular theory or "branch" under which a defendant can be guilty of child endangerment,

21  indeed a different one than appeared to be specified in the Information, the instruction was

22  legally accurate.  Prior to the jury's instruction, the court and parties discussed the version of

23  CALJIC No. 9.37 that would be given.  Defense counsel had multiple opportunities to object on

24  the basis asserted here but did not do so.  (RT at 1768-70, 2241-42.)  On this record, even if

25  petitioner suffered an instructional error, he fails to demonstrate that it rendered his trial so unfair

26  that it violated due process.

B.      Ground Three: Ineffective Assistance of Trial Counsel

Petitioner claims that trial counsel's alleged failure to assert his constitutional rights as to Mejia's daughter's testimony and the trial court's erroneous jury instructions, as discussed in subsection A, *supra*, constituted ineffective assistance of counsel.  In particular, petitioner asserts that trial counsel should have (1) either cross-examined Mejia's daughter or requested that her testimony be stricken, and (2) objected to the child endangerment instruction that was given.

To demonstrate a denial of the Sixth Amendment right to the effective assistance of counsel, a petitioner must establish that counsel's performance fell below an objective standard of reasonableness, and that he suffered prejudice from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 690 (1984).  Prejudice is found where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.*

The United States Supreme Court recently observed once again that "[s]urmounting *Strickland's* high bar is never an easy task." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (citing *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).  Establishing an unreasonable application of *Strickland* by a state court is all the more difficult:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, 131 S. Ct. at 788 (internal quotations and citations omitted).

1.  Ineffective Assistance:  Mejia's Daughter's Testimony

Mejia's daughter was the third prosecution witness to testify.  Before the prosecution called her to the stand, petitioner's trial counsel, Ralph Cingcon, moved to preclude

14

1 her from testifying at all.  (RT at 283-87.)  In support of his unusual request, Cingcon argued, in

2 relevant part, that: (1) Mejia's mother, the adult victim of the assault, was in a better position "to

3 give a complete set of facts to the jury;" (2) "I believe it's going to be traumatic for the child to

4 testify"; and (3) "My client does not wish his daughter to testify."  (RT at 283.)

5          The trial court rejected the defense request indicating there was no legal basis to

6 support it.  The court further noted that it had not been provided with medical documentation

7 supporting the claim that testifying would be psychologically damaging to the child.  (RT at 285.)

8          Petitioner argues "it would be nearly impossible to manufacture any reason, let

9 alone a satisfactory one, for a lawyer to allow damaging testimony to be considered by the jury

10 without cross-examination."  Respondent argues that petitioner's claim completely overlooks the

11 fact that he was charged with attempting to murder Mejia and her daughter (along with attendant

12 gun use allegations) and that through his counsel's representation, which included an attempt to

13 prevent the daughter from testifying at all, he was acquitted of those charges.

14          It is true that defense counsel indirectly succeeded in his request to preclude the

15 girl from testifying when she left the stand and never returned after merely saying what her name

16 meant in Spanish and with whom she lived.  (RT at 290-91.)  It was defense counsel who

17 suggested the court take a break when the girl began to cry.  (RT at 291.)  Her potentially

18 damaging testimony was thus kept from the jury, which was left with the testimony of Mejia.[2]

19 Had the girl returned to the stand, her direct examination would have resumed and the prosecutor

20 almost certainly have questioned her about the incident.  A reasonable argument exists, therefore,

21 that counsel's decision not to cross-examine the girl or otherwise have her recalled to the stand

22 was tactical, strategic, and successful, as petitioner was acquitted of two counts of willful and

23 deliberate attempted murder and the accompanying firearm enhancements.

24 _____

25 [2] As set forth, Mejia told both a 911 operator and a police officer at the scene that she and
her daughter were in the car when petitioner fired shots at the car, and her preliminary hearing
testimony was consistent with these statements.  At trial, however, she testified in contradiction

26 to her previous statements that they were not in the car when petitioner fired shots at the car.

1    Petitioner likewise fails to meet his burden regarding trial counsel's alleged failure

2  to request that the child's brief testimony be stricken.  As discussed, the testimony at issue

3  consisted merely of her saying what her name meant in Spanish and with whom she lived.  She

4  then began crying.  Counsel's alleged failure to request that this testimony be stricken and that

5  the jury be instructed to ignore the tears did not fall below an objective standard of

6  reasonableness.

7    Petitioner also fails to show that he was prejudiced by the alleged deficiency; i.e.,

8  a reasonable probability that, but for counsel's error, the result of the proceeding would have

9  been different.  To the contrary, the evidence independent of the girls testimony and crying was

10  sufficient to support the offenses of conviction and petitioner fails to show that the jury would

11  have reached a different verdict has the girl's testimony been stricken or had they been instructed

12  to ignore her crying.

13    2.  Ineffective Assistance: Child Endangerment Instruction

14    Petitioner likewise fails to show that counsel's performance was deficient in

15  failing to object to the child endangerment instruction.  As discussed *supra*, in subsection

16  A(4)(b), the instruction did not allow the jury to convict without finding all elements of the

17  crime.  Petitioner was charged with violating section 273a(a) and the jury was instructed with an

18  edited version of CALJIC No. 9.37 on this crime.  Although the instruction appears to address

19  only one theory under which a person can be guilty of violating that section, petitioner does not

20  allege that the instruction is erroneous as it relates to the theory of instruction.  Rather, petitioner

21  argues that counsel erred in not objecting to the fact that he was charged by Information with a

22  violation of that section based on a different theory.

23    Respondent persuasively argues that any objection by counsel would have been

24  futile.  The failure to make a futile motion does not constitute deficient performance. *See James*

25  *v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994).  Here, substantial trial evidence supported the instruction

26  as given, as California law requires.  *See People v. Cole*, 33 Cal.4th 1158, 1206 (2004).  Further,

1   state law permitted the trial court to order or allow amendment of the Information to conform to

2   the evidence at any stage of the proceedings, so long as the offense charged was not itself

3   changed or a new offense added.  *See* Cal. Penal Code § 1009.  Had counsel objected on the basis

4   asserted, the prosecutor would most likely have sought to amend the Information accordingly.

5   *See Id.*; *Jones v. Smith*, 231 F.3d 1227, 1239 & n8 (holding that counsel's oversight in failing to

6   realize a discrepancy between the Information and jury instructions that could have been

7   remedied pursuant to section 1009 caused no prejudice and therefore did not constitute

8   ineffective assistance of counsel).  Petitioner fails to show a reasonable probability that, but for

9   counsel's error, the result of the proceeding would have been different.

10                    C.   Ground Four: Sufficiency of the Evidence for Child Endangerment

11                    As discussed, the jury was instructed on a single theory of child endangerment in

12   which a defendant "under circumstances or conditions likely to produce great bodily harm or

13   death, willfully causes or willfully and as a result of criminal negligence permits a child to suffer

14   unjustifiable physical pain or mental suffering[.]"  (RT at 2492.)  Petitioner claims that

15   insufficient evidence at his trial supported a child endangerment conviction on this theory.  In

16   particular, petitioner contends that since the jury found him not guilty of shooting at an inhabited

17   vehicle, the prosecution failed to show that the girl was in a position of danger when he fired the

18   gun.  Petitioner further argues that (1) there was no evidence the child suffered any harm,

19   including mental harm, from his actions as opposed to the mother's actions; (2) any mental harm

20   had to be proved by expert testimony; and (3) there was no evidence that his purpose or intention

21   was to inflict pain or suffering on the child.

22                    On direct review, presented with the same contentions, the California Court of

23   Appeal rejected petitioner's claim of insufficient evidence:

24                    Actual physical injury is not an element of the crime of felony
                     child endangerment. (*People v. Wilson, supra,* 138 Cal.App.4th at
25                    p. 1197.) Moreover, because the interest protected by section 273a
                     is "the lives of highly vulnerable children," the term "likely" in the
26                    context of the statute does not mean that death or serious injury is

                                         17

probable. (*Id.* at p. 1204.) Instead, it means "a substantial danger, i.e., a serious and well-founded risk, of great bodily harm or death." (*Ibid.*)

Defendant argues there was no evidence R. was in danger because there was no evidence of where R. stood when he fired the shots into the car, or how far she stood from the car. The circumstances here were that defendant was shooting a gun in a public place (next to a bar) in close proximity to Mejia's six-year-old daughter.

There was sufficient evidence from which the jury could deduce that defendant's shooting a gun under such circumstances produced a serious and well-founded risk of great bodily harm to the child. Several possibilities come to mind. Shooting a gun under such circumstances in such a public place could reasonably lead to responding gunfire by someone else. People, especially children, do not always stay in one place, so that although defendant did not aim the gun at the child, she nevertheless could have been in the line of fire. Finally, bullets ricochet, such that a bullet fired in one direction, may end up in an entirely different place. We conclude these circumstances created a serious and well-founded risk of great bodily harm or death.

We also find sufficient evidence that R. experienced unjustified mental suffering. The circumstantial evidence of this suffering was the 911 tape on which the jury heard R. crying, the responding officers' testimony that R. was crying, tearful, nervous and upset, and the fact that R. was so distraught at trial that she began crying within seconds of beginning her testimony, and was never able to testify.

Defendant's claim that there was no evidence he, as opposed to Mejia, caused R.'s mental suffering is unavailing. The prosecution's burden is met if it produces evidence from which it may be reasonably inferred that defendant's actions were a substantial factor in producing the result. (*People v. Scola* (1976) 56 Cal.App.3d 723, 726.) There was sufficient evidence that defendant engaged in actions that would reasonably result in mental suffering to the child. The fact that someone else may have also engaged in such acts is immaterial.

Defendant contends that expert testimony was required to prove R. suffered mentally. He cites *People v. Smith* (2005) 35 Cal.4th 334 in support of this proposition. *People v. Smith* did not hold that expert testimony is required to prove mental suffering.

...

We are aware of no case holding mental suffering cannot be proved absent expert testimony. Although expert testimony may be of assistance, the mental suffering of a child subjected to conditions

1           likely to produce great bodily harm or death is something a
          reasonable person can recognize.

2

3 *People v. Montanez*, *supra*, at 4-5.

4        The Due Process Clause protects the accused against conviction except upon

5 proof beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). On habeas corpus

6 review, sufficient evidence supports a conviction so long as, "after viewing the evidence in the

7 light most favorable to the prosecution, any rational trier of fact could have found the essential

8 elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319

9 (1979); s*ee also Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam). The focus

10 under *Jackson* is not the correctness, but rather, the reasonableness of the state judgement. *See*

11 *Hurtado v. Tucker*, 245 F.3d 7, 19 (1st Cir. 2001).

12        The *Jackson* standard must be applied "with explicit reference to the substantive

13 elements of the criminal offense as defined by state law." *Davis v. Woodford*, 384 F.3d 628, 639

14 (9th Cir. 2004) (*quoting Jackson*, 443 U.S. at 319.) The dispositive question is "whether the

15 record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Chein v.*

16 *Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318). Under the

17 AEDPA, the *Jackson* standard is applied with an additional layer of deference. *Juan H. v. Allen*,

18 408 F.3d 1262, 1274-75 (9th Cir. 2005). The relevant question here is "whether the decision of

19 the California Court of Appeal reflected an 'unreasonable application of' *Jackson* and *Winship* to

20 the facts of this case." *Id*. (citing 28 U.S.C. § 2254(d)(1)).

21        Accepting the court of appeal's interpretation and application of state law

22 regarding the elements of the offense, as this court is required to do (*see Bradshaw v. Richey*, 546

23 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct

24 appeal of the challenged conviction, binds a federal court sitting in habeas corpus")), the record

25 evidence reasonably supports a finding that petitioner was guilty of child endangerment.

26 /////

1    In order to prove the crime of child endangerment, the prosecution had to prove

2  two elements: (1) that petitioner willfully caused or, willfully and as a result of criminal

3  negligence, permitted a child to suffer unjustifiable physical pain or mental suffering; and (2) that

4  his conduct occurred under circumstances likely to produce great bodily harm or death.  (RT at

5  2492.)  As the state court noted in its decision rejecting this claim, the word "willfully" in this

6  context "does not require any intent to violate the law, or to injure another."  (RT at 2492.)

7    Record evidence at trial supported both required elements.  In particular, Mejia

8  testified that she and petitioner argued and physically fought in the parking lot of the bar while

9  Mejia's daughter was in the front passenger seat of Mejia's car.  (RT at 299, 304.)  Petitioner told

10  Mejia to get in her car and go home; when she refused, he hit and kicked her.  (RT at 305-06;

11  1935-36.)[3]  Petitioner testified he heard Mejia's daughter crying at this time.  (RT at 1936.)

12    Mejia then returned to her car, called her sister on her cell phone, and asked her

13  sister to come to the bar to help her beat up a woman who was sitting at the bar with petitioner.

14  (RT at 1937, 2045.)  Petitioner testified he did not want this to happen so he attempted to

15  physically force Mejia into the car, shutting the door on her to get her inside.  (RT at 1937-38,

16  2045, 2115.)

17    Petitioner and Mejia both testified that around this time Mejia reached under the

18  front seat and pulled out a gun that she had brought with her that night.  (RT at 357-63, 371, 589-

19  90, 613-14, 1937-38, 2115-16.)[4]  Petitioner testified that Mejia pointed the gun at him, so he

20  _____

21    [3] On direct examination, Mejia testified that petitioner kicked her and hit her once.  On
   cross-examination, she denied the same and said she had lied on direct examination.  As set forth

22  elsewhere, Mejia's trial testimony differed greatly from her pre-trial statements and preliminary
   hearing testimony; her credibility was suspect and a reasonable jury could have believed her

23  testimony on direct examination over her testimony on cross-examination on this point.

24    [4] Mejia had given at least four inconsistent statements prior to trial, including her 911 call
   and her testimony at the preliminary hearing.  In these statements she said that petitioner

25  retrieved the gun from his car; in one statement he said that he always carried a gun in his car.
   (RT at 718-19, 736, 1060, 1065; see also RT at 310, 313, 316, 321, 332, 335-36.)  In addition,

26  petitioner testified regarding the first bullet he shot into the car: "I took *my* gun out from this
   waist right here... and shot it, boom, one time..."  (RT at 1939 (emphasis added).)  Under these

1  backed up as Mejia started to get her daughter out of the car, saying "Come on, let's go meet

2  your new mommy[.]" (RT at 1938.)  According to petitioner, at this point, Mejia's daughter was

3  both "crying" and "screaming." (RT at 2039.)

4          After additional commotion, Mejia pulled her daughter out of the car and reached

5  into the car and grabbed what petitioner thought was a knife but might have been the keys to her

6  car. (RT at 1938-39, 2038, 2040.) Mejia swung the object at petitioner's face, just barely

7  striking him and inflicting a "little scratch" on his head. (RT at 2042, 2136-37.) Petitioner

8  testified that Mejia's attack made him mad so he decided to break her car window. (RT at 2042-

9  43, 2120.) Petitioner testified he took his gun out of his "waist" and fired a shot into the rear

10  window of the car. (RT at 1939, 2043.) When the window did not break after the first shot, he

11  fired a second shot, and told Mejia, "I ain't playing neither"; and "You better get your ass home

12  now." (RT at 1940-41, 2043-44, 2138, 2140, 2141, 2143.) Mejia and her daughter got in the car

13  and drove away. (RT at 1941.)

14          Thus, according to petitioner's testimony, Mejia was within arm's reach of

15  petitioner just before he fired shots into the car. The jury could have reasonably inferred that

16  Mejia's daughter was also nearby witnessing him fire gunshots into her mother's car as well as

17  the preceding events which included his verbal warnings to Mejia and use of force to attempt to

18  get Mejia into the car. Petitioner also testified that just after Mejia and her daughter drove away,

19  Mejia drove by the bar's parking lot two times, causing him to fire additional "warning shots"

20  into the air which the jury could have reasonably inferred that Mejia's daughter also witnessed.

21  (RT at 1941-43.) Evidence was also received that the girl was crying on the recording of the 911

22  call made just after the incident. (Clerk's Transcript of Proceedings ("CT") at 539.)

23          In sum, the jury could have reasonably inferred that Mejia's daughter experienced

24  unjustifiable mental suffering based on the testimony of Mejia and petitioner, in addition to the

25

26  circumstances the jury could have reasonably believed that Mejia's prior inconsistent statements
    were truthful on this point and that petitioner retrieved the gun from his car.

substance of the 911 call and witnesses who testified about Mejia's prior inconsistent statements. That it was Mejia's behavior, in addition to that of petitioner, that caused the girl's mental suffering is immaterial. As the court of appeal indicated, under state law, petitioner's conduct only had to be a substantial factor in producing the result.

Under these circumstances petitioner fails to demonstrate that the state court's rejection of his insufficient evidence claim was contrary to, or an unreasonable application of the *Jackson* or *Winship* standards. The court of appeal reasonably found that, viewing the record evidence in the light most favorable to the prosecution, a rational trier of fact could have found each element necessary to convict petitioner of child endangerment.

> **D.    Ground Five: Instruction on Assault with a Firearm**

Petitioner was charged with and convicted of assault with a firearm, defined as an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another. Cal. Penal Code § 240. The trial court instructed with a version of CALJIC No. 9.00, as follows:

> In order to prove an assault, each of the following elements must be proved:
>
> [Number one, a] person willfully and unlawfully committed an act which by its nature would probably and directly result in the application of physical force on another person;
>
> Number two, the person committing the act was aware of the facts that would lead a reasonable person to realize that as a direct and natural and probable result of this act that physical force would be applied to another person;
>
> And, number three, at the time the act was committed the person committing the act had the present ability to apply physical force to the person of another.

(RT at 2467.)

For his final ground, petitioner claims that the trial court erroneously gave the foregoing instruction which did not require that intent to commit battery be shown, in violation of due process. Presented with this claim on direct review, the California Court of Appeal held

1  that the jury was properly instructed with the most recent version of CALJIC No. 9.00 available,

2  which accurately reflected state law as set forth by the California Supreme Court in *People v.*

3  *Williams*, 26 Cal.4th 779 (2001).  Under *Williams*, the California Supreme Court conclusively

4  determined that "assault only requires an intentional act and actual knowledge of those facts

5  sufficient to establish that the act by its nature will probably and directly result in the application

6  of physical force against another."  *People v. Montanez, supra*, at 6 (citing *Williams*, 26 Cal.4th

7  at 790).  The court of appeal thus found no error, noting that it was bound by the decisions of the

8  California Supreme Court.  *Id.*

9          As previously set forth, a claim of instructional error does not raise a cognizable

10  federal claim unless the error, considered in context of all the instructions and the trial record as a

11  whole, "so infected the entire trial that the resulting conviction violates due process."  *McGuire*,

12  502 U.S. at 71-72; *see also Kibbe,* 431 U.S. at 152-55, n.10; *Nauhten,* 414 U.S. at 146-47.

13  Although premised on the due process clause, petitioner's claim here essentially asserts an error

14  in the interpretation and application of state law which cannot form the basis for federal habeas

15  corpus relief.  *See McGuire*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court

16  to reexamine state-court determinations on state-law questions.").  Absent an obvious attempt to

17  evade a constitutional issue, this court is bound by the California Supreme Court's interpretation

18  of its own laws.  *See Richey*, 546 U.S. at 76; *Mullaney v. Wilbur*, 421 U.S. 684, 691 & n.11

19  (1975).  It is further noted that a habeas corpus petitioner may not "transform a state-law issue

20  into a federal one merely by asserting a violation of due process."  *Langford v. Day*, 110 F.3d

21  1380, 1389 (9th Cir. 1996).

22          "[T]he primary responsibility for defining crimes against state law, fixing

23  punishments for the commission of these crimes, and establishing procedures for criminal trials

24  rests with the states."  *Payne v. Tennessee*, 501 U.S. 808, 824 (1991).  Petitioner fails to show that

25  the United States Constitution requires that intent to commit battery be shown in order to sustain

26  a conviction of assault with a firearm.  The court of appeal's rejection of this claim was not

1 contrary to, or an unreasonable application of any clearly established Supreme Court precedent.

2                                                 VI.  CONCLUSION

3              For all the foregoing reasons, IT IS HEREBY RECOMMENDED that the

4 application for writ of habeas corpus be DENIED.

5              These findings and recommendations are submitted to the United States District

6 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-

7 one days after being served with these findings and recommendations, any party may file written

8 objections with the court and serve a copy on all parties.  Such a document should be captioned

9 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10 shall be served and filed within seven days after service of the objections.  Failure to file

11 objections within the specified time may waive the right to appeal the District Court's order.

12 *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

13 1991).

14 DATED: June 22, 2011

15                                      *Charlene H. Sorrentino*
                                        _____
                                        CHARLENE H. SORRENTINO

16                                      UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26